```
           UNITED STATES DISTRICT COURT
            DISTRICT OF MASSACHUSETTS

              CRIMINAL No. 1:22-CR-10125-1

                    UNITED STATES

                          v.

                    JOSHUA EISNOR
```

**EISNOR'S SENTENCING MEMORANDUM**

**INTRODUCTION**

On June 23, 2022, the Defendant, Joshua Eisnor ("Eisnor") made his initial appearance on an information charging him with conspiracy to distribute and possession with intent to distribute oxycodone in violation of 21 U.S.C. §846; Eisnor appeared in United States District Court in Boston, and pled guilty to the one count information on this same date.  A plea agreement has been executed by the parties in this matter.  This memorandum addresses Eisnor's background and circumstances, which present several mitigating factors that warrant a probationary sentence.

The factual allegations serving as the basis for these charges can be found at paragraphs 7 through 14 in the revised Pre-Sentence Report (hereinafter "PSR") dated November 28, 2022 authored by U.S. Probation Officer Martha Victoria.

As to Eisnor's guideline score probation calculated, in the PSR paragraphs 18 through 27, a total offense level of 12. After subtracting 2 points for acceptance of responsibility the total

offense level is reduced to 10. Probation also acknowledges that an additional downward departure may be warranted pursuant to the Safety Valve provision of USSG §5C1.2, which would place Eisnor at an offense level of 8. The executed plea agreement reflects that the parties have agreed to a total offense level of 10 under the guidelines. Probation calculates a criminal history score of 0 putting Eisnor in criminal history category I. With a total offense level of 10 this yields a guideline range of 6 to 12 months as noted in paragraph 83 of the PSR; as indicated the guidelines do provide for the possibility of a probationary sentence under this provision as well.  Further, if the court determines that the criteria for the safety valve provision has been met, this would place Eisnor in a guideline range of 0 to 6 months, as indicated in paragraph 84 of the PSR.

Eisnor acknowledged his wrongdoing and accepted responsibility for his conduct when he pled guilty to the information in June 2022. However, even prior to this guilty plea Eisnor accepted responsibility and cooperated fully with law enforcement when he confessed to his involvement in the distribution of pills during an interview on March 03, 2022.  Due to his background, his lack of any significant criminal history, and his acceptance of responsibility, the defense strongly contends that a sentence of probation rather than an incarcerated sentence is appropriate in this case, as being representative of

the seriousness of the offense as well as the likelihood of recidivism.

Admittedly, the present case stems from poor judgment and drug addiction for which Eisnor has admitted and understands the wrongfulness of his conduct. This charge further represents Eisnor's most significant encounter with the criminal justice system, aside from several offenses that occurred nearly 25 years ago when Eisnor was a teenager and mainly involved being a minor in possession of alcohol, as well as a motor vehicle offense and a first offense OUI. Eisnor has never served any committed time and all of his prior offenses were dismissed after successfully completing his probationary period. A sentence of probation on the present offense is no greater than necessary to effectuate the sentencing guidelines and the sentencing goals of 18 U.S.C. § 3553(a).

## **FACTUAL BACKGROUND**[1]

### History and Characteristics of Eisnor
### (18 U.S.C. § 3553(a)(1))

Eisnor is a 43-year-old man who has lived his entire adult life as a productive law-abiding citizen and family man. Eisnor grew up and has lived in Massachusetts for most of his life. He grew up having a stable and happy childhood with his mother,

---

[1] The facts herein asserted are based on the PSR, Pretrial Services Report and conversations with the Defendant.

3

father and two sisters until the time of his parents' divorce when he was roughly 13 years old. The divorce was "messy" and was a challenging time for Eisnor and his siblings. After the divorce, although he went to live with his mother and only saw his father on weekends, he blamed his mother for the divorce and their relationship deteriorated. He has not spoken to his mother in several years due to a further falling out over money and family values. Eisnor has always been and continues to be very close with his father and has a good relationship with both of his sisters, although he is closer with his sister who lives here in Wilmington, MA.

Eisnor attended and completed high school at Hamilton-Wenham High and went on to attend North Shore Community College, though he never obtained his degree. Eisnor served four years in the U.S Marine Corps from 2001-2005 where he received honorable discharge; he served three tours abroad and earned numerous ribbons and commendations for his service. Following his military service Eisnor returned to Massachusetts and began his career as a Firefighter at the Malden Fire Department. He spent just over 16 years employed as a firefighter in Malden, and resigned in June 2022 due to the present offense. Eisnor is uncertain about his future career path but has expressed a desire to return to school and also to work with Veterans, possibly through the VA, an agency which both of his sisters currently work for.

In addition to his service in the military and as a career firefighter, Eisnor has also been dedicated to supporting his family. He has been married to his wife Michelle for over 14 years and the two began dating in high school. After he returned from his military service they began a serious relationship and were married in 2008. They have two children together, Cameron and Collin, ages 10 and 6 respectively. Eisnor resides with his wife, children and the family dog at the home they have owned since 2011 in North Reading, MA. Although Eisnor's relationship with his wife has been strained due to the present offense, she continues to be very supportive of him and he maintains a very close relationship with both of his sons. His family notes that he is a good man and a good father who has engaged in poor judgement particularly due to his substance use and mental health issues.

Eisnor has been diagnosed with PTSD following his military deployment in Iraq, and also has a history of anxiety and depression. He has received treatment through the VA and has seen numerous counselors, as well as being prescribed various medications. He began self-medicating to cope with some of his symptoms and has abused his prescription medications in the past. Eisnor used opiates regularly from 2005 to 2007, and began using benzodiazepine in 2006. He was admitted to detox programs on multiple occasions for treatment of his substance use disorder as well as PTSD and mental health issues. Since 2019, Eisnor has been

receiving daily suboxone treatments through Middlesex Recovery Center in Woburn, MA. He also currently participates in counseling twice a week at Middlesex Recovery, aimed at addressing both his substance use and mental health needs. Additionally, Eisnor attends AA meetings regularly. He believes this treatment has helped him cope with his current situation, as well as his underlying substance use and mental health disorders. He understands and recognizes his need for continued treatment.

Eisnor credits his current mental health and substance abuse treatment, as well as the continued support of his family for getting him through this difficult time. He is embarrassed and ashamed of his actions, and greatly regrets what he did and the shame that it has brought on his family. Eisnor has willingly and even eagerly accepted responsibility for his actions since the outset of this investigation and he is committed to continuing to be the hardworking and productive member of society that he had always been prior to this offense.
Eisnor concedes and regrets what he has done and looks forward to being able to put this offense behind him and move forward with the support of his family and the necessary counseling and treatment programs.  As such, all of these factors and considerations warrant a probationary sentence in which Eisnor will be monitored and will be able to continue to receive treatment to address his underlying substance use and mental

health issues, while still being able to be present and provide support for his family and particularly his young children.

## ARGUMENT

<u>A Sentence of Probation is no Greater Than Necessary to Effectuate the Sentencing Goals of 18 U.S.C. s. 3553(a).</u>

A sentencing range calculated based on the United States Sentencing Guidelines is advisory not mandatory, and review of a sentence imposed is limited to determining whether or not that sentence is "reasonable;" <u>United States</u> v. <u>Booker</u>, 543 U.S. 220, 260-262 (2005); see also <u>Rita</u> v. <u>United States</u>, 127 S.Ct. 2456, 2470-71 (2007)(Stevens, J. concurring).

Procedurally, a district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range. See <u>Id.</u>, at 2465. The Guidelines are not the sole consideration, however, and the sentencing judge must consider all of the s. 3553(a) factors to determine whether they support the sentence requested. <u>Gall</u> v. <u>United States</u>, 128 S.Ct. 586, 596 (2007). The goal should be to "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing" and to "impose a sentence sufficient but not greater than necessary." <u>United States</u> v. <u>Rodriguez</u>, 541 F.3d 19, 28 (1st Cir., 2008).

Here, probation calculates in the PSR a sentencing guideline range of 6-12 months, or 0-6 months with Safety Valve provisions, as well as an option of 1-5 years probation. The parties have executed a plea agreement in which it is agreed upon that the

government will recommend a sentence of 90 days incarceration followed by 24 months of supervised release.  In taking into account this particular defendant and the present offense the court, while having discretion, should impose a sentence of probation with appropriate conditions rather than incarceration.  Such a sentence is minimally sufficient and no greater than necessary to achieve the sentencing goals.

## 18 U.S.C. s.3553 Sentencing Factors

**1. The Nature and Circumstances of the Offense and the History of Characteristics of the Offender**

(a) <u>Nature and Circumstances of the Offense</u>:

Undoubtedly, the offense conduct here is serious and Eisnor has readily acknowledged his misdeeds through his confession and cooperation with the investigation, followed by his current plea and his acceptance of responsibility.  It is however important to note that the present offense stems directly from Eisnor's ongoing struggles with mental health and substance abuse issues.  Eisnor does not say this to downplay the seriousness of this offense, but rather to demonstrate that with the appropriate conditions and ongoing treatment for these issues, he poses very little risk of recidivism and no danger to the community.

(b) <u>Eisnor's History and Circumstances</u>

The defense has already addressed this factor under the "Factual Background" section of this memorandum.

    **2. The Need for the Sentence to Promote Certain Statutory Objectives:**
      **(A) to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide just Punishment for the Offense;**
      **(B) to Afford Adequate Deterrent to Criminal Conduct;**
      **(C) to Protect the Public from Further Crimes of the Defendant; and**
      **(D) to Provide the Defendant with Needed Education or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

A period of probation with appropriate monitoring and conditions is no greater than necessary to effectuate these goals. Eisnor has been effectively engaged in treatment and has continued to take his medications only as prescribed. He and his family report seeing significant improvements from this treatment. Eisnor poses little risk of re-offense and no danger to the community, particularly if he maintains his treatment plan and sobriety. A sentence involving supervised release where Eisnor would be monitored and would continue to participate in mental health and substance abuse treatment programs would best effectuate these goals.

    **3. The Kinds of Sentences Available;**

The sentences available to Eisnor in light of the plea agreement were addressed previously in this memorandum and are addressed by probation on page 21 of the PSR.

    **4. The Advisory Guideline Range;**

Previously addressed in this memorandum.

    **5. Any Pertinent Policy Statements issued by the Sentencing Commission;**

Previously addressed in this memorandum.

**6. The Need to Avoid Unwarranted Sentence Disparities;**

Previously addressed in this memorandum.

**7. The Need to Provide Restitution to any Victims of the Offense.**

Restitution is inapplicable to the present case as provided by the probation department at paragraphs 99-100 of the PSR.

Respectfully Submitted,
Joshua Eisnor,
By his Attorney,

_____
Stephen Neyman
B.B.O. # 551576
10 Tremont Street, Suite 602
Boston, MA 02108
(P) 617-263-680
(F) 888-266-1781
steve@neymanlaw.com

<u>CERTIFICATE OF SERVICE</u>

I, Attorney Stephen Neyman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including AUSA Eugenia M. Carris (eugenia.carris@usdoj.gov) and Probation Officer Martha Victoria (Martha_Victoria@map.uscourts.gov) via email on December 1, 2022.

_____
Stephen Neyman
B.B.O. # 551576
10 Tremont Street, Suite 602
Boston, MA 02108
(P) 617-263-680
(F) 888-266-1781
steve@neymanlaw.com